**DOCKETED**

JUL 0 7 2003

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KURT SORENSEN, PAUL LARSON,        )
SARAH BROWN, JOHN WINTERMAN        )
and BELINDA CHANG on behalf of      )
themselves And all other Plaintiffs similarly )
situated known and unknown,         )
                                     )
          Plaintiffs,                )        Case No. 03 C 1609
                                     )
     v.                              )        Judge Pallmeyer
                                     )
                                     )
CHT CORP., INC., a/k/a CHARLIE       )
TROTTERS and CHARLIE TROTTERS,       )
                                     )        JURY DEMANDED
          Defendants.                )

FILED
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT
JUL - 3 2003

## PLAINTIFF PAUL LARSON'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR CLASS CERTIFICATION OF HIS COUNT V UNJUST ENRICHMENT CLAIM

### I.   INTRODUCTION

Over the past five years, CHT Corp. and Charlie Trotter have illegally retained millions of dollars in tips waiters have earned serving tables at "Charlie Trotters," the renowned restaurant operated by Defendants. These tips were retained by Defendants pursuant to a condition of employment that required Plaintiff and the class to "turn over" to Defendants their earned tips from customers. In exchange for giving up their earned tips, Plaintiff and the class were paid $3.09 per hour and were also "paid back" a portion of their tips that equated to a bi-weekly salary set by Defendant. The amount of tips returned to Plaintiffs in the form of a "salary," however, amounted only to a fractional percentage of the tips actually turned over to Defendant each week. Defendant then used the overage of turned over tips for a variety of purposes, including the payment of other

25

employees' wages.1

This compensation plan, known as the Trotter Plan, is illegal under federal law. *Davis v. B & S, Inc.*, 38 F. Supp. 2d 707 (N.D. In. 1998)("[§ 203(m) of the FLSA] precludes an agreement between an employer and a 'tipped employee' that any part of tips received by such employee belongs to the employer and must be turned over to the employer"); *Wright v. U-Let-Us-Skycap Servs., Inc.*, 648 F. Supp. 1216, 1217 (D. Colo. 1985) (agreement that employees turn in all their tip income to the employer, so that employer could pay them the minimum wage from this sum but retain the difference, was in "blatant contravention" of § 203(m); *Marshall v. Krystal Co.*, 467 F. Supp. 9, 13 (E.D. Tenn. 1978) (restaurant could not consider its employees' tips as a portion of their wages where the employees were not permitted to keep all the tips they received); *Winans, et. al., v. W.A.S., Inc.*, 772 P.2d 1001,1008 (Wash. 1989)(an arrangement where the employer takes all of an employee's tips and uses this money to fulfill his minimum wage obligation – and help to pay other expenses as well – violated the FLSA).

Plaintiff Larson's unjust enrichment claim, brought on behalf of a class, seeks disgorgement of the tips illegally retained by Defendant. Larson now seeks to certify his unjust enrichment claim

---

1 For example, in the bi-weekly pay period ending December 22, 2001, Plaintiff and the class (i.e., wait staff) turned over to Defendants $58,293.98 in credit card tips. See Exhibit A to the Motion for Class Certification. During this same bi-weekly pay period, however, Plaintiffs and the class were paid back only $11,850.30 in tips as their purported "salary." See Exhibit B to the Motion for Class Certification. At the same time, numerous employees not employed as waiters, including cooks (e.g., Matthias Merges), managers (e.g., Mark Signorio) and office employees (Sari Zernich) were paid their bi-weekly wages with tips. Compare Defendant's answer to Plaintiffs' interrogatory No. 9 (Exhibit A, p.8-11), listing a total of only 18 persons employed as waiters over the last three years, with Defendant's payroll report for the two-week period ending December 22, 2001, showing an *additional* 18 persons *not* employed as waiters being paid with tips, including Defendant's managers (e.g., Mark Signorio and Daniel Fitzgerald) and office staff (Tatyana Levy and Sari Zernich). See Exhibit B to the Motion for Class Certification.

under Fed. R. Civ. 23(a) and 23(b)(3).

## II.  APPLICABLE STANDARD FOR CLASS CERTIFICATION

The Federal Rules of Civil Procedure provide the federal district courts with broad discretion to determine whether certification of a class-action lawsuit is appropriate. *Ladegaard v. Hard Rock Concrete, Inc.*, 2000 U.S. Dist. LEXIS 17832 (N.D. Ill. December 1, 2000), citing *Keele v. Wexler*, 149 F.3d 589, 592 (7th Cir. 1998). Under the Rules, a determination of class certification requires a two-step analysis. *Id.* First, the named plaintiff must demonstrate that his action satisfies the four threshold requirements of Rule 23(a):

> (1) numerosity (the class must be so large 'that joinder of all members is impracticable'); (2) commonality (there must exist 'questions of law or fact common to the class'); (3) typicality (named parties' claims or defenses' are typical . . . of the class'); and (4) adequacy of representation (the representative must be able to 'fairly and adequately protect the interests of the class').

Fed. R. Civ. P. 23(a). In addition, the action must qualify under one of the three subsections of Rule 23(b). *Hardin v. Harshbarger*, 814 F. Supp. 703, 706 (N.D. Ill. 1993); Fed. R. Civ. P. 23(b). Plaintiffs' Complaint here satisfies the requirements of Rule 23(a) and is sufficient to satisfy, at a minimum, Rule 23(b)(3). Rule 23(b)(3) provides that an action may be maintained as a class action if "the court finds that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

In deciding a certification motion, district courts must not consider or resolve the merits of the claims of the purported class. *Cariad v. Metro North Commuter R.R.*, 191 F.3d 283; 291, 293 (2nd Cir. 1999), quoting *Eisen v. Carlisle & Jacqelin*, 417 U.S. 156, 177 (1974). Instead, "when

considering [such] a motion ..., courts should consider the allegations of the complaint as true."

*Hirschfeld v. Stone*, 193 F.R.D. 175, 182 (S.D.N.Y. 2000).

## III.   ARGUMENT

### A.   This Court Should Certify As A Class Action Plaintiff Larson's Unjust Enrichment Claim [2]

#### 1.   Certification Under Rule 23(a)

##### a.   Numerosity -- Rule 23(a)(1)

Rule 23(a)(1) requires a class large enough that the joinder of all members would be "impracticable." "Impracticability" does not mean "impossibility," it only requires that it would be difficult or inconvenient to join all members of the class. *Doe v. Guardian Life Ins. Co. of Am.*, 145 F.R.D. 466, 471 (N.D. Ill 1992).

In this Circuit, courts have found the numerosity requirement satisfied by as few as 13 class members and have routinely certified classes with 40 or less members. See *Barner v. City of Harvey*, 1997 U.S. Dist. LEXIS 3570 (N.D. Ill. 1997) (13 class members); *Allen v. Isaac*, 99 F.R.D. 45, as amended, 100 F.R.D. 373 (N.D. Ill. 1983)(17 class members); *Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D. Ill 1986)(29 class members).

The class here is at least 18 persons. See Exhibit B, Defendant's answers to interrogatories identifying 18 persons employed as waiters between March 2000 and March 2003. Over the entire five year limitation period (March 4, 1998 to the present), the class size is likely an additional 6 to 10 persons, or a total of 24 to 30 persons. These numbers are sufficient to establish numerosity. See,

---

[2]The Declaration of Plaintiff Larson in support of this Motion is attached hereto as Exhibit A.

4

c.g., *Ladegaard, Supra*; see also *Barner v. City of Harvey*, 1997 U.S. Dist. Lexis 3570 (N.D. Ill

1997) (25 persons); *Rosario v. Cook County*, 101 F.R.D. 659 (N.D. Ill. 1983)(20 persons); *Allen v.

Isaac*, 99 F.R.D. 45 (N.D. Ill. 1983)(17 persons). In any event, in order to establish numerosity, a

plaintiff need not allege the exact number of members of the proposed class. *Ladegaard*, 2000 U.S.

Dist. LEXIS 17832 at *9-13, citing *Johnson v. Rohr-Ville Motors, Inc.*, 189 F.R.D. 363, 368 (N.D.

Ill. 1999).

     Because the number of class members is sufficient and the circumstances do not leave joinder

a practical alternative, the class meets the Rule 23(a)(1) standard for numerosity.

<b>b.    Commonality -- Rule 23(a)(2)</b>

     Rule 23(a)(2) requires that "there are questions of law or fact common to the class."

Commonality does not mandate that all class members make identical claims and arguments, only

that common issues of fact or law affect all class members. "The commonality requirement has been

characterized as a 'low hurdle' easily surmounted." *Ladegaard, citing, Scholes v. Stone, McGuire &*

*Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992). Generally, courts have liberally construed the

commonality requirement to mandate a minimum of one issue common to all class members.

*Marison A. ex rel. Forbes v. Giuliani*, 126 F.3d 372, 376 (2d. Cir. 1997)("The commonality

requirement is met if plaintiffs' grievances share a common question of law or fact."). Here,

Plaintiffs' and the class members' claims are identical. Plaintiffs and the class were all required to

turn over their tips to Defendant. These tips then became the "property" of Defendant in violation of

federal law. *Davis, supra*, 38 F. Supp. 2d 707 (N.D. In. 1998); *Wright, supra*, 648 F. Supp. at 1217;

*Marshal, supra*, 467 F. Supp. at 13; *Winans, supra*, 772 P.2d at 1008. The common questions,

therefore, include (1) whether Plaintiffs and the class were all subjected to the same payroll practices

5

that resulted in Plaintiffs being illegally required to turn over all their earned tips to Defendant, and (2) the amount of earned tips that Plaintiffs were so required to turn over to Defendant.

Although there may be differences in the details of class members' claims, like the amount of tips owed to each person,[3] the essence of the claims will be that all tips earned by them during the period of their employment were required to be turned over to Defendant. This was illegal as to Plaintiff and the class. *Davis, supra,* 38 F. Supp. 2d 707 (N.D. In. 1998); *Wright, supra,* 648 F. Supp. at 1217; *Marshal, supra,* 467 F. Supp. at 13; *Winans, supra,* 772 P.2d at 1008.

A common inquiry is the most efficient and appropriate way to answer these common legal and factual questions.

### c.    Typicality -- Rule 23(a)(3)

Rule 23(a)(2) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory. *Id.*; see also *De La Fuente v. Stokely-Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir. 1983). "Typical does not mean identical, and the typicality requirement is liberally construed." *Gaspar v. Linvatec Corp.,* 167 F.R.D. 51, 57 (N.D.Ill.1996)

Here, Plaintiff's and the class members' claims arise out of the same allegedly unlawful conduct – Defendants' retention of all of Plaintiffs' earned tips. Employers may not take advantage of the tip credit provisions of the FLSA unless the employee has been allowed to "retain" all the tips

---

[3]Differences among the class members with respect to damages are not relevant for certification purposes. "The commonality requirement may be met if the common question goes to liability despite individual differences in damages. *Jenson v. Eveleth Taconite Co.,* 139 F.R.D. 657, 664 (D. Minn).

that the employee received. § 203(m) (1998). *Davis, supra,* 38 F. Supp. 2d 707 (N.D. In. 1998);

*Wright, supra,* 648 F. Supp. at 1217; *Marshal, supra,* 467 F. Supp. at 13; *Winans, supra,* 772 P.2d

at 1008; *Usery v. Emersons Ltd.,* 1976 U.S. Dist. LEXIS 12168 (E.D. Va 1976)(arrangement much

like the one at-issue here outlawed by 1974 amendments; regulations to the contrary are invalid);

*Doty v. Elias,* 733 F.2d 720 (10th Cir. 1984).

     This makes the claims "typical" for Rule 23(a)(3) purposes. Fed. R. Civ. Pro. 23(a)(3).

### d.    Adequacy of Representation -- Rule 23(a)(4)

     Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the

interests of the class." This is a two-part inquiry. First, "Rule 23(a)(4) requires that plaintiffs

demonstrate that 'class counsel is qualified, experienced, and generally able to conduct the

litigation.' Second, Plaintiffs must also demonstrate that there is no conflict of interest between the

named plaintiffs and other members of the plaintiff class." *Susman v. Lincoln American Corp.,* 561

F.2d 86 (7th Cir. 1977); *Marisol A. ex rel. Forbes v. Giuliani,* 126 F.3d 372, 378 (2d Cir. 1997).

### i.    Class Counsel is Highly Experienced

     The legal representative of the class is adequate because he will prosecute the action

vigorously and is experienced and competent in class litigation, including wage-and-hour litigation

and employment discrimination litigation. Declaration of Douglas M. Werman, attached hereto as

Exhibit C; *Martens v Smith Barney,* 181 F.R.D. 243, 259 (S.D.N.Y. 1998)(finding adequacy

supported by fact that lead class counsel "documented her experience in employment discrimination

litigation, including class actions lawsuits"). That the action will be prosecuted vigorously is

evidenced by putative class counsel's experience in other litigation he has been responsible for before

this court. See *Martens,* 181 F.R.D. at 259 (finding adequacy supported by Court's knowledge of

litigation efforts of class counsel).

### ii. There is No Conflict of Interest Between the Named Plaintiff and the Class

The conflict of interest inquiry "merely requires that plaintiffs not have 'antagonistic' interests, so 'only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status.'" *Martens, supra,* 181 F.R.D. at 259 (quoting *Krueger v. New York Tel. Co.,* 163 F.R.D. 433 (S.D.N.Y. 1995)). With the named plaintiff's unjust enrichment claim identical to those of the rest of the class, there are no antagonistic interests that go to the subject matter of the suit. See also *Ladegaard, supra*; *Adames v. Mitsubishi Bank*, 133 F.R.D. at 91 (E.D.N.Y. 1989)(rejecting defendant's argument that "personnel at different employment levels may have antagonistic interests").

### 2. The Class Satisfies the Requirements of Rule 23(b)

In addition to meeting the requirements of Rule 23(a), a class action must also satisfy the requirements of one the subdivisions of Rule 23(b). Rule 23(b)(3) provides that a class can be maintained if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Plaintiff Larson meets that standard here.

### a. Predominance of Common Questions

As regards the "predominance" of common questions, the requirement is met when "the group for which certification is sought seeks to remedy a common legal grievance." *Riordan*, 113 F.R.D. at 65. The test is not whether resolution of "common issues" would be dispositive of the

8

entire litigation." *Id*. Rather, as the court observed in *Johns v. DeLeonardis*, 145 F.R.D. 480, 484-85

(N.D.Ill, 1992):

> [(b)(3)] merely requires that the class claims have a dominant, central focus.
> Satisfaction of this criterion normally turns on the answer to one basic questions: is
> there an essential common factual link between all class members and the defendant
> for which the law provides a remedy?

For reasons set forth above with respect to commonality under Rule 23(a)(2) and typicality under

Rule 23(a)(3), there exists predominating common questions of fact and law, and there can be no

dispute that the class members' claims arose from the same course of conduct by the Defendants.

### b.    Superiority of Class Action Method

A class action is superior to other methods of adjudication in this case. Judicial economy and

efficiency, as well as consistency of judgments would be achieved through the certification of the

class. See *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181 (N.D. Ill 1992). The alternative is

dozens of individualized suits in the state courts and piecemeal litigation. *Id*; See *Ladegaard*, 2000

U.S. Dist. LEXIS 17832.

### IV.    CONCLUSION

For the foregoing reasons, and as set forth in Plaintiffs' Complaint, Plaintiff's Motion for

Class Certification and Plaintiff's supporting exhibits, Plaintiff respectfully requests that the Court

grant this Motion for Class Certification.

Respectfully submitted,

Dated: July 2, 2003

Douglas M. Werman (ARDC #6204740)
Law Offices of Douglas M. Werman
77 W. Washington, Suite 1801
Chicago, Illinois 60602
(312) 419-1008

9

# *See Case File for Exhibits*