IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KURT SORENSEN, PAUL LARSON, SARAH BROWN, JOHN WINTERMAN and BELINDA CHANG on behalf of themselves And all other Plaintiffs similarly situated known and unknown,<br><br>    Plaintiffs,<br><br>v.<br><br>CHT CORP., INC., a/k/a CHARLIE TROTTERS and CHARLIE TROTTER,<br><br>    Defendants. | Case No. 03 C 1609<br><br>Judge Pallmeyer |
| BEVERLY KIM on behalf of herself and all other Plaintiffs similarly situated known and unknown,<br><br>    Plaintiff,<br><br>v.<br><br>CHT CORP., INC., a/k/a CHARLIE TROTTERS and CHARLIE TROTTERS<br><br>    Defendants. | Case No. 03 C 7362<br><br>Judge Pallmeyer |

PLAINTIFFS' MEMORANDUM OF LAW
ON THE COMPUTATION OF THE FLSA "REGULAR RATE"
FOR DEFENDANTS' HOURLY EMPLOYEES

## I. INTRODUCTION

Although complex in its execution, Defendants' compensation scheme was grounded on a very simple and long-standing dodge: exclude a large portion of the wages from the "regular rate" (by denominating it a "bonus," or "tips," or the mysterious "other") and overtime wages will necessarily be small, regardless of the number of overtime hours worked. Not content with minimizing overtime payments in this manner, Defendants interwove an additional avoidance device: the alleged "day rate." By claiming to pay nonexempt employees on a day rate, Defendants further fixed both Plaintiffs' pay and the restaurant's payroll expenses, irrespective of the number of overtime hours actually worked. *See* 29 C.F.R. §§778.500, 778.502, 778.503 (describing similar unlawful avoidance devices to create artificial regular rates of pay).

Defendants' illegal practice of excluding certain wages from the calculation of the regular rate for overtime purposes is most apparent in *Kim*, but the differences between the back, and the front, of the house regarding that practice disappear, once it is clear that the "tip" payments made to the waitstaff were not in fact "tips." Those payments were not tips because the waiters were required to turn over those sums to Defendants.

The evidence that Plaintiffs were paid on an hourly basis is overwhelming and, at this point in the litigation, irrebutable.[1] First, Defendants admitted that Plaintiffs were paid on an hourly basis: they did so in their pleadings, Defs.' Amd. Answer Pls.' Third Amd. Compl. (*Sorensen*), ¶ 5; Defs.' Answer Aff. Defenses (*Kim*), ¶ 6; and in requests for admissions, Ex. A, Defs.' Resp. to Plt.'s First Request for Admissions (*Sorensen*), ¶¶ 26-35; Ex. B, Defs.' Resp. Plt.'s First Request for Admissions, (*Kim*), ¶¶ 1, 2, 9, 13, 17, 21, 25, 27.

Second, virtually every document produced by Defendants that relates to wages or hours substantiates the fact that Plaintiffs, both in *Sorensen* and *Kim*, were paid on an hourly basis. *See, e.g.*, Plts.' Pos. Stmt., Exs. C, E. Furthermore, Controller Carle testified that even after the implementation of the alleged "day rate" scheme, Plaintiffs were "still hourly employees." *Id.*, Ex. C, Carle Dep., 135:20-24.

Defendants now clutch at the "day rate" theory for obvious reasons: they hope to get away

---

[1] Given the page length limitation on this submission, Plaintiffs incorporate by reference the Statement of Facts and Exhibits contained in Plaintiffs' Settlement Position Statement (hereinafter, "Plts.' Pos. Stmt."), submitted to the Court on May 10, 2004.

with paying Plaintiffs half time for overtime hours, rather than time and one-half. But coming as it does in the face of Defendants own binding admissions, their contrary documents, the testimony of their controller, and the characterization of the compensation scheme of the Illinois DOL inspector in 2002[2] that Defendants have been so proud to highlight, their day rate claim is nothing short of breathtaking.

## II. ARGUMENT

### A. DEFENDANTS' FAILURE TO INCLUDE ALL REMUNERATION PAID TO HOURLY WORKERS IN CALCULATING THEIR "REGULAR RATE" VIOLATED THE FAIR LABOR STANDARDS ACT

An employer must pay its nonexempt employee one and one-half times the worker's "regular rate" for all time worked over 40 hours in a workweek. 29 U.S.C. § 207(a)(1).[3] The regular rate of pay is a rate per hour, and "is determined by dividing [the employee's] total remuneration for employment (less statutory exceptions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation is paid." 29 C.F.R. § 778.109.

Defendants characterized regular wage payments made to Plaintiffs as "tips" and "other" payments, and even, as Judi Carle testified, as a "bonus." Defendants' characterization, and their manipulation of payroll documents to support that characterization, was nothing more than a "device" to exclude money from the calculation of the regular rate so that that rate would be artificially low. As Carle acknowledged, Ex. C, Carle Dep., 151:16-21, such payments must be included in the calculation of the regular rate. *See, e.g.,* 29 C.F.R. §§ 778.500, 778.501, 778.502.

### 1. Gratuities Left by Patrons for Waiters, Which Had to Be Turned Over to Defendants, Are Not "Tips" Within the Meaning of §§ 203(m) or 203(t); Rather, the Waiters Were Merely Collecting Additional Income from the Operation of the Defendants' Establishment.

Where employees are required to turn over tips given to them by patrons to the employer, the employees are thereby collecting "additional income" for the employer from the operation of the

---

[2]The DOL investigator came to that conclusion, apparently, by reviewing the payroll documents, which *appear* to reflect proper overtime compensation.

[3]Congress expressly granted the Secretary of the Department of Labor the duty of administering the FLSA. *Condo v. Sysco Corp.*, 1 F.3d 599, 604 (7th Cir. 1993). In so doing, Congress implicitly authorized the Secretary the power to interpret the Act, and in particular, Section 7(a)(1). 1 F.3d at 604 – 05.

2

establishment. 29 C.F.R. §531.55. Even though those sums are not collected by the imposition of a compulsory charge on the customer by the employer, "plainly the employee is not receiving tips within the meaning of section 3(m) and 3(t) [29 U.S.C. §§ 203(m) and 203(t)]. The amounts received from customers are the employer's property, not [the employee], and do not constitute tip income to the employee." *Id.*

Because the *Sorensen* Plaintiffs were required to turn over the "tips" given to them by the patrons of Defendants' establishment, Plts.' Pos. Stmt., Ex. C, Carle Dep., 101:1 – 108:24, those sums were not tips, but additional income to Defendants. 29 C.F.R. §531.55. That money was used by Defendants in the operation of their business, including the payment of salaries to non-tipped employees. Ex. D, Def.'s Suppl. Resp. Plts.' First Req. Admissions, pp. 8 – 64. As such, the sums Defendants paid to Plaintiffs that were identified as "tip" money must be included in their "total remuneration" for calculation of the regular rate.

There is other evidence that the "tip" payments made to Plaintiffs were a fiction. Carle testified that in weeks where the "tip pool went negative," Defendants' tip income was insufficient to satisfy the "guaranteed" wage of the waitstaff, the waiters' paychecks nonetheless reflected their receipt of "tips," even though it was the restaurant that had "made up the money." Ex. C, Carle Dep., 134:2-11. Further, the "tip" payments to Plaintiffs fluctuated with the number of hours that Plaitiffs were paid for a given pay period, rather than the amount of tips that patrons gave to Plaintiffs during that period. As Carle testified, Plaintiffs "still need[ed] to be paid straight time and overtime and ... the tip amounts would vary depending on the amount of hours they worked." Ex. C, Carle Dep., 132:10-16.

Thus, the "tip" amounts paid to the Sorensen Plaintiffs are no different than the illegal "pseudo percentage bonus" scheme, 29 C.F.R. § 778.503, where a "bonus" payment is excluded from the regular rate and decreases in direct proportion to increases in the number of hours worked in a week in excess of forty (40). *Id.*

2. **The Exclusion of the "Other" Payment Made to the Back of the House Employees From Their Regular Rate Calculation Was Patently Illegal**

Any pretense at complying with the Act[4] regarding the regular rate calculation disintegrates

---

[4] Defendants will likely argue that the IMWL and its implementing regulation does not include a "pseudo-bonus" provision like FLSA regulation. *See* 29 C.F.R. § 778.502, "Artificially labeling part of the regular wages a "bonus." However, the Illinois Administrative

3

when the examination turns to the back of the house. While Plaintiffs believe that the "other" payments made to the kitchen staff did indeed originate from the tips generated by the *Sorensen* Plaintiffs, among others, even Defendants' artful construction cannot turn cooks and pastry chefs into "tipped employees."

The regular "other" payments served no purpose other than to artificially lower the regular rate, and therefore the overtime pay. Indeed, FLSA regulation specifically forbids such attempts to evade overtime payments, and with the simple substitution of the word "bonus" for the word "other," the regulation neatly fits Defendants' scheme. 29 C.F.R. § 778.502. Moreover, Judi Carli testified that Defendants often used the term "bonus" to characterize the nonhourly wage payments made to nonexempt employees.[5] Ex. C, Carle Dep., 150:20; 151:16-21.

Further, Defendants were informed that the practice of excluding regular wage payments from the regular rate was unlawful, by an Illinois DOL investigator, sometime in 2001. Carle testified that in 2001 she was told by the Illinois DOL that the "day rate" amount had to be included in the calculation of the regular rate. Ex. C, Carle Dep., 151:16-21. Nevertheless, Defendants maintained their illegal compensation scheme until October 2002.

### 3. Plaintiffs' "Regular Rate" of Pay for Overtime Purposes Is the Total Workweek Remuneration Divided by the Total Number of Hours Actually Worked in the Workweek for Which Such Compensation Is Paid

The regular rate of pay is a rate per hour, and "is determined by dividing [the employee's] total remuneration for employment (less statutory exceptions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation is paid." 29 C.F.R. § 778.109.

The calculation is not a complicated one: (1) the total compensation for the pay period[6] (Tot. Comp.) divided by the payroll hours credited (P Hr) equals the regular rate (RR); (2) the regular rate

---

Code and case law suggest otherwise. *Condo v. Sysco Corp.*, 1 F.3d 599, 601 n.3 (7th Cir. 1993).

[5]This scheme also had the characteristics of a "pseudo percentage bonus," as described in 29 C.F.R. § 778.503.

[6]The Act, of course, requires that overtime be calculated and paid on a workweek basis. However, since the total hours credited to employees in Defendants' payroll documents is given on a pay-period basis, workweek hours credited cannot be determined.

times straight-time hours (ST Hr) equals straight-time wages owed (ST Wages); (3) one and one-half times the regular rate (OT Rate) multiplied by the actual timesheet overtime hours worked (OT Hr) equals overtime wages owed (OT Wages); (4) straight-time wages owed plus overtime wages owed equals the total compensation that should have been paid (Tot Comp); (5) that amount, less the compensation paid (Comp Paid), equals the amount Defendants owe Plaintiffs for a given pay period (Tot Wages Owed). The formulae are as follows:

(1) Tot Comp/P. Hr. = RR
(2) RR * ST Hr = ST Wages
(3) OT Rate (RR * 1.5) * OT Hr = OT Wages
(4) ST Wages + OT Wages = Tot Comp
(5) Tot Comp − Comp Paid = Tot Wages Owed

(1) 1400.05/50 = 28.00
(2) 28.00 * 59.5 = 1666.06
(3) 42.00 (28.00 * 1.5) * 13 = 546.00
(4) 1666.06 + 546.00 = 2212.06
(5) 2212.06 − 1400.05 = **812.01**

By way of example, the box on the left shows the computation for Plaintiff Sorensen, for the pay period ending December 23, 2000.[7]

Plaintiffs regularly worked substantial amounts of overtime that were wholly uncompensated by Defendants. See Plts.' Pos. Stmt., Exs. D, H. That time must be compensated at the time and one-half rate.

## B. DEFENDANTS PAID PLAINTIFFS ON AN HOURLY BASIS, AND THEIR USE OF THE "DAY RATE" WAS SIMPLY AN ARTIFICE TO UNLAWFULLY LIMIT THEIR OVERTIME OBLIGATION

Defendants' exclusion of certain wages from the calculation of Plaintiffs' regular rate violated the FLSA and IMWL. See Section A 2, *supra*. Liability is thus established against Defendants.

Notwithstanding their contrary binding admissions and the record evidence, Defendants are expected to claim that they compensated Plaintiffs on a day rate (29 U.S.C. §778.112), rather than on an hourly basis. Because this issue goes to the question of whether Plaintiffs should be compensated for all overtime hours at one and one-half times the regular rate, or at one-half that rate, Plaintiffs here address the "day rate" issue.

---

[7]The data are taken from Plaintiffs' Settlement Position Statement, Exhibit D, at 11.

1. **Defendants Admitted in Their Answers to the Complaints, and in Requests to Admit, That Plaintiffs were Paid on An Hourly Basis.**

Facts admitted in a party's pleadings are judicial admissions, binding on that party. *Kohler v. Leslie Hindman, Inc.*, 80 F.3d 1181, 1185 (7th Cir. 1996)("When a party in a lawsuit makes an admission in its pleadings or in its answer to a request for admissions, it makes a judicial admission that can determine the outcome of that lawsuit.") So too, facts admitted in answer to Rule 36 requests are conclusively established. *Id.* citing Fed.R.Civ.P. 36(b). Defendants have admitted, in their answer and in Rule 36 admissions, that they paid Plaintiffs on an hourly basis. Defs.' Amd. Answer Pls.' Third Amd. Compl. (*Sorensen*), ¶ 5; Defs.' Answer Aff. Defenses (*Kim*), ¶ 6; Ex. A, Defs.' Resp. to Plt.'s First Request for Admissions (*Sorensen*), ¶¶ 26–35; Ex. B, Defs.' Resp. Plt.'s First Request for Admissions, (*Kim*), ¶¶ 1, 2, 9, 13, 17, 21, 25, 27.

2. **The Record Evidence, Including Time and Payroll Records of Defendants, and the Testimony of Their Controller, Judi Carle, Conclusively Demonstrate that Plaintiffs Were Paid By the Hour.**

Literally every document produced by Defendants in these cases that relates to wages or hours substantiates the fact that Plaintiffs, both in Sorensen and Kim, were paid on an hourly basis. *See, e.g.*, Plts.' Pos. Stmt., Exs. C, E. Further, Controller Carle testified that even after Defendants allegedly began paying on a day rate, Plaintiffs were "still hourly employees." *Id.*, Ex. C, Carle Dep., 135:20-24.[8]

Finally, Defendants claim that the second DOL investigation, in 2002, establishes that their compensation scheme was lawful. Plaintiffs disagree,[9] but that investigation *did* establish that Defendants' employees were paid on an hourly basis. After reviewing the payroll documents for the period October 1999 through October 2002, and speaking with Defendants' accountant, and to

---

[8] Q.  Why did you continue to calculate overtime in this manner after you went to the day rate system?
 A.  Because they were still hourly employees and they still needed to be paid overtime.

[9]  Of course, the DOL official did not know that Defendants were unlawfully paying non-tipped employees with tip money. Moreover, the investigator did not reference, and Defendants apparently did not inform the investigator, that an overtime violation had been found by DOL one year earlier, under the same compensation scheme. Finally, even a cursory review of Defendants' payroll documents would have revealed that hourly employees were regularly receiving "bonus" payments that were excluded from the regular rate calculation.

6

Charlie Trotter, the state compliance officer concluded that Defendants were properly paying their employees *on an hourly basis*. Ex. E, DOL Memorandum.

### 3. Plaintiffs Alleged "Day Rate" Was Reduced In Instances Where Employees Did Not Work a Full Day

Defendants produced a documents which demonstrates that back of the house employees were on occasion paid for half days. Ex. F, Carli Dep., Ex. 5. Carle could not explain why the document reflected half-day pay, although she claimed the document was created after a DOL inspection in order to bring Defendants into compliance. Ex. C, Carli Dep.,159:3-11; 201:14-23 Nonetheless, that document shows employees were compensated periodically at a half-day, instead of a full- day, rate.

## III. CONCLUSION

For the foregoing reasons, Plaintiffs ask this Court for an Order holding that the proper computation of the regular rate for overtime purposes under the FLSA and IMWL shall include, for the *Sorensen* Plaintiffs, all remuneration paid to them, including such remuneration denominated as "tips"; for the *Kim* Plaintiffs, all remuneration paid to them, including such remuneration denominated as "other." Plaintiffs further ask that this Court find that Defendants did not utilize a "day rate" in the compensation of Plaintiffs, but instead that Defendants paid Plaintiffs on an hourly basis, by virtue of Defendants' admissions in pleadings and request to admit.

Respectfully submitted,

Dated: June 2, 2004

_____
One of the Attorneys for Plaintiffs

Douglas M. Werman
Law Offices of Douglas M. Werman
77 West Washington, Suite 1801
Chicago, Illinois 60602
(312) 419-1008

Jamie G. Sypulski
Attorney-at-Law
122 South Michigan Avenue,
Suite 1720
Chicago, Illinois 60603
(312) 360-0960

7

*See Case File For Exhibits*